IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Dr. Joshua Kollmann, d/b/a Carolina Sports Clinic, | C/A No. 0:21-cv-03015-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Carolina Sports Clinic – Fort Mill LLC, and Fikri Soussi, | |
| Defendants. | |

This matter is before the Court on Defendants Carolina Sports Clinic – Fort Mill LLC and Fikri Soussi's Motion to Dismiss, or in the alternative, Motion to Stay. ECF No. 13. Plaintiff Dr. Joshua Kollmann filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 16, 19. For the reasons set forth below, the Motion is granted.

## BACKGROUND

On July 1, 2015, Plaintiff, along with Defendant Fikri Soussi and Dr. Bradley Wiest, formed Carolina Sports Clinic – Fort Mill LLC ("CSCFM"), which operates a chiropractic and physical therapy business with a facility located in Fort Mill, South Carolina. ECF Nos. 1 at 5; 13-4 at 2. In forming the limited liability company, the members entered into an operating agreement ("the Agreement"), which stated that the purpose of the business was as follows:

> [t]o expand the Carolina Sports Clinic, PLLC ("CSC") business model and brand, including chiropractic and related services, as developed by [Plaintiff]. Company shall develop the systems, staffing and structure to emulate the CSC business model and to support the operations and growth of the brand

> name.  Company will, at all times, be in compliance with federal and state franchising, and other laws or regulations, in the course of it[s] franchising activities.  [Plaintiff] hereby gives his explicit permission for Company to replicate the business model, which he has established under Carolina Sports Clinic, PLLC and agrees to assist Company in establishing a similar business to the CSC model.

ECF No. 13-1 at 4–5.  Each of the members agreed to make certain contributions to CSCFM's capital, as outlined in Exhibit A to the Agreement.  *Id.* at 5, 19.  In exchange for a 25% interest in the business, Plaintiff agreed to contribute "professional services and intellectual property."  *Id.* at 19.  The parties also executed a Member Agreement, in which Plaintiff agreed that, between he and Dr. Wiest, one of them would be located at the CSCFM facility at least one day per week, and that they would coordinate their schedules to fulfill this requirement.  ECF No. 13-2 at 2.

The Agreement also contained a dispute resolution provision, which states:

> **9.4.1.**  All disputes arising out of or in connection with this Agreement or any transaction hereunder shall be first submitted to non-binding mediation before an independent mediator selected by mutual agreement of the parties.  If the parties fail to agree on a mediator or fail to agree after mediating in good faith, the dispute shall be finally settled by binding arbitration under the Arbitration Rules of The Arbitration Group, LLC, and [sic] a South Carolina limited liability company.  The arbitrators' award shall be final and binding.  Judgment upon the award rendered may be entered in any court having jurisdiction over the party against which the award is rendered.  The parties expressly consent to the jurisdiction of the federal and state courts situated in South Carolina for the purpose of reviewing and enforcing any arbitration award rendered pursuant to this Section 9.4.  The arbitrator shall state his findings of fact and conclusions of law and the parties agree that the arbitration award shall be reviewable for errors of law or errors in the application of law to the facts.  The arbitration shall take place in Charlotte, North Carolina, or such other place as the parties may agree upon.  The arbitration award shall also include (i) a provision that the prevailing party in such arbitration shall recover its costs of the

> arbitration and reasonable attorneys' fees from the other party or parties, and (ii) the amount of such fees and costs. In the event of a dispute between any Member and the Company or a dispute relating to the Company between any Member and another Member, the Company or the remaining Member(s) by Supermajority vote may elect to purchase the Membership Interest of the Member by a Fair Market Value and on such terms as outlined in Section 7.3 (ii). In such event, Section 7.1.3 shall apply as if death of the Member has occurred. The claims of the Member, if any, shall not be affected except that the arbitrator shall take account of the fact that the Member's Interest is being purchased and shall allow nothing for events, facts or conditions that have occurred or may occur after the date of the notice of purchase. The arbitrator shall make no award based in whole or in part upon any loss or prejudice to the Member as a result of the purchase.

ECF No. 13-1 at 17.

On March 15, 2018, Plaintiff and Defendant Soussi entered into an Amendment to the Agreement ("the Amendment"), in which they agreed to continue the business following the disassociation of Dr. Wiest. ECF No. 16-1. The Amendment reinstated and reincorporated all of the provisions of the Agreement that were not specifically changed in the Amendment. *Id.* at 2. The Amendment also contained a revised Exhibit A, which changed Plaintiff's interest in the business to 33.33% in exchange for his contribution of professional services. *Id.*

On May 11, 2021, Defendant Soussi notified Plaintiff by letter that Plaintiff had disassociated himself from the business because he had not worked at the CSCFM facility for over a year and was now considered an inactive member. ECF No. 16-2. Subsequently, Plaintiff learned that Defendant Soussi was in the process of forming another CSC location in Rock Hill, South Carolina and planned to continue using the CSC

trade name and marks.[1]  ECF No. 16 at 6.  As a result, Plaintiff notified Defendant Soussi on June 10, 2021, that CSCFM's license to use Plaintiff's CSC marks was terminated and revoked, effective immediately.  ECF Nos. 16 at 7; 16-3.  Nevertheless, Plaintiff claims Defendant Soussi continued to make extensive unauthorized use of his marks.  ECF No. 16 at 7.  After attempts to informally resolve the issues surrounding his separation from the business failed, Plaintiff requested a non-binding mediation, to which Defendants ultimately agreed, and the mediation was scheduled for September 21, 2021.  *Id.* at 8.  However, due to certain disagreements between the parties, Defendants cancelled the mediation on September 17, 2021.  ECF Nos. 16 at 8; 16-5 at 1.

Thereafter, on September 19, 2021, Plaintiff filed suit in this Court against Defendants, alleging claims for federal trademark infringement, false designation of origin, and unfair competition pursuant to 15 U.S.C. §§ 1114, 1125(a), and for common law trademark infringement and unfair competition under South Carolina law.  ECF No. 1 at 7–10.  Specifically, Plaintiff claims that, "[i]n furtherance of the business purpose of CSCFM, [he] gave CSCFM permission to use his CAROLINA SPORTS CLINIC® Marks,

---

[1] Plaintiff owns a federal United States trademark registration for the CAROLINA SPORTS CLINIC® mark for use in connection with "chiropractic services; chiropractics; massage; physical therapy; physical therapy evaluation, identification, and management of movement dysfunction to restore, maintain, and promote optimal physical function preventing the onset, symptoms and progression of impairments, functional limitations, and disabilities resulting from disease, disorders, conditions, or injuries" in International Class 044.  ECF No. 16-3 at 5.  The mark was registered on January 1, 2019, as United States Trademark Registration No. 5,645,686.  *Id.*

Plaintiff also claims to own a federal trademark application for the CAROLINA SPORTS CLINIC+ design mark for use in connection with acupuncture, massage, chiropractic services, chiropractics, nutrition counseling, physical therapy, and providing laser therapy for treating medical conditions in International Class 044.  ECF No. 1 at 4.  The Complaint states a copy of the application is attached as Exhibit 2, but the Court is unable to locate the document on the docket.

4

granting an implied revocable license between [Plaintiff] and CSCFM so long as [Plaintiff] had control over the use of the Marks as a Member of CSCFM." *Id.* at 5. However, Plaintiff asserts he has terminated and revoked this license but Defendants continue to use Plaintiff's CSC marks in furtherance of their businesses without his permission. *Id.* at 6–7.

On October 1, 2021, Defendants commenced proceedings in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board ("the Board"), seeking to cancel Plaintiff's registration of the CAROLINA SPORTS CLINIC mark. ECF No. 13-3. On March 17, 2022, the Board suspended the proceedings pending final disposition of this case. ECF No. 25-1 at 4. The Board determined that the mark and Agreement at issue in its proceedings was also the subject of Plaintiff's trademark infringement claims in this case; thus, the Board found that the outcome of this case may bear on its decision-making and suspended the proceedings. *Id.* at 3

On November 4, 2021, Defendants filed a Motion to Dismiss, or in the alternative, a Motion to Stay. ECF No. 13. Plaintiff filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 16, 19. Thereafter, Plaintiff filed a Supplement to his Response to include material from Defendants' briefing in the Board's proceedings, which was not available at the time of filing his Response. ECF No. 20. Defendants moved to strike Plaintiff's supplemental filing, and Plaintiff filed a Response in Opposition. ECF Nos. 21, 22. The Honorable J. Michelle Childs denied Defendants' Motion to Strike, allowed Plaintiff to file his supplement retroactively, but cautioned the parties that they must seek leave from the court before filing sur-replies to future filings and that sur-replies are

generally discouraged. ECF No. 26. On August 11, 2022, this case was reassigned to the undersigned. ECF No. 27. Defendants' Motion is now before the Court.

## APPLICABLE LAW

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id*. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc. v. Silicon*

*Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A party seeking to compel arbitration must do so by establishing the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *see also Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Energy Absorption Sys. v. Carsonite Int'l*, 377 F. Supp. 2d 501, 504 (D.S.C. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002).

## **DISCUSSION**

Defendants move to dismiss Plaintiff's Complaint without prejudice, or in the alternative, to stay this action pending mediation, and if necessary, arbitration. ECF No. 13 at 1. Specifically, Defendants argue that the Agreement's dispute resolution

7

provision,[2] requiring mediation, and if necessary, arbitration, applies in this case because Plaintiff's claims arise out of the Agreement—that is, the nature of his contribution of intellectual property to CSCFM in exchange for an equity interest and the circumstances under which CSCFM may continue to use Plaintiff's intellectual property after his separation from the company.  ECF No. 13-4 at 7–8.  Consequently, Defendants contend Plaintiff's Complaint should be dismissed because he has failed to satisfy a condition precedent to submit to mediation as required by the Agreement.  *Id.* at 3.

In contrast, Plaintiff contends that his claims do not arise out of or in connection with the Agreement because they are not for breach of contract, breach of fiduciary duty, or any other claim relating to the Agreement.  ECF No. 16 at 2.  Instead, Plaintiff argues that his trademark infringement claims specifically relate to Defendants' use of his marks outside of the Agreement and that he did not agree to arbitrate trademark infringement claims.  *Id.* at 2, 12.  Alternatively, Plaintiff maintains that, to the extent the Agreement's dispute resolution provision applies, he has fully complied with its requirements prior to filing suit.  *Id.* at 16.  Specifically, he made a formal request for mediation, and Defendant Soussi refused to mediate in good faith.[3]  *Id.*  Plaintiff also claims that Defendants have waived any right to compel arbitration in this case because they have filed an

---

[2] The parties do not contest that the Agreement's dispute resolution provision contains an arbitration clause.  Thus, the question before the Court is whether Plaintiff's claims are subject to arbitration under the Agreement.

[3] Plaintiff also explains that, when Defendants conferred regarding their Motion to Dismiss or to Stay, Plaintiff agreed to stay this case to allow the parties to mediate.  ECF No. 16 at 20.  However, Defendants again refused to mediate in good faith and proceeded to file their Motion.  *Id.*

administrative action with the Board seeking to cancel his trademark registration. *Id.* at 18.

Applying the four-factor test articulated by the Fourth Circuit, the Court finds the elements required to compel arbitration are satisfied. *See Wood*, 429 F.3d at 87. First, a dispute exists between the parties, as evidenced by the allegations in Plaintiff's Complaint.

Second, the arbitration agreement is a written agreement that contains an arbitration clause purportedly governing this dispute. In the Agreement establishing CSCFM, Plaintiff contributed intellectual property in exchange for an interest in the company.[4] The specific intellectual property Plaintiff contributed to CSCFM at its inception and the extent to which CSCFM used the intellectual property while Plaintiff was a member and could continue using the intellectual property after Plaintiff's separation from the company are key inquiries underlying Plaintiff's claims in this case. Consequently, the Court finds that Plaintiff's claims relate to or arise out of the Agreement and are therefore covered within the scope of the Agreement's dispute resolution provision.[5] *See AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)

---

[4] Although Exhibit A to the Amendment provides that Plaintiff only contributed professional services in exchange for his increased 33.33% interest in the company after Dr. Wiest's disassociation, there is nothing in the record that indicates CSCFM's use of Plaintiff's intellectual property changed or ended following execution of the Amendment. Accordingly, the Court finds Plaintiff's change in contribution stated in the Amendment does not alter or otherwise affect the analysis in this case.

[5] The Court further finds Defendants have not waived any right to compel arbitration in this case by filing a petition for cancellation with the Board. "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the

("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960))); *see also Vestry & Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 588 S.E.2d 136, 140 (S.C. Ct. App. 2003) ("[I]f the clause contains language compelling arbitration of any dispute arising out of the relationship of the parties, it does not matter whether the particular claim relates to the contract containing the clause; it matters only that the claim concerns the relationship of the parties.").

Third, the Court finds that the Agreement affects interstate commerce. *See*, *e.g.*, *McCutcheon v. THI of S.C. at Charleston, LLC*, C.A. No. 2:11-cv-02861-DCN, 2011 WL 6318575, at *5 (D.S.C. Dec. 15, 2011) ("The FAA has an expansive reach, similar to that of the Commerce Clause, such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute." (quoting *THI of S.C. at Columbia, LLC v.*

---

stay." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). "But even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (emphasis in original) (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith*, 817 F.2d 250, 252 (4th Cir. 1987)). "The party opposing arbitration 'bears the heavy burden of proving waiver.'" *Id.* at 250 (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). Here, Plaintiff has not proved that he has suffered actual prejudice. Indeed, the Board has suspended its proceedings on Defendants' petition pending the outcome of this case.

*Wiggins*, C.A. No. 3:11-cv-00888-CMC, 2011 WL 4089435, at *1 n.3 (D.S.C. Sept. 13, 2011))).

Finally, the fourth element is satisfied because Plaintiff has refused to arbitrate this action as evidenced by his filing this lawsuit in federal court.  Thus, the Court finds that a valid arbitration agreement exists, and the claims presented fall within its scope.  *See Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (stating that in deciding whether an arbitration agreement is enforceable, the Court must "ensure that the dispute is arbitrable—i.e., that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement" (citing *Glass v. Kidder Peabody & Co.*, 114 F.2d 446, 453 (4th Cir. 1997))).  Accordingly, the parties are directed to proceed to mediation in accordance with the terms of the Agreement's dispute resolution provision.[6]  *See Perdue Farms, Inc. v. Design Build Contracting Corp.*, 263 F. App'x 380, 383 (4th Cir. 2008) ("Where a condition precedent to arbitration is not fulfilled, a party to a contract does not have a right to arbitration.").  Should the parties' mediation efforts fail to resolve the dispute, the parties shall proceed to arbitration pursuant to the Agreement.  *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of an agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

---

[6] The Court notes that the parties previously agreed on an independent mediator and that the previous mediation was cancelled due to other issues.

"The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration,'" and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3). However, the Fourth Circuit has held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is an appropriate remedy. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Although the Fourth Circuit has acknowledged the inconsistency between its opinions on this issue, presently in this Circuit, a district court must stay an action pending arbitration of any arbitrable claims, with the exception that it may instead dismiss an action if all claims asserted are arbitrable. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012); *Weckesser v. Knight Enters. S.E., LLC*, 228 F. Supp. 3d 561, 564 (D.S.C. 2017). Here, in light of the fact that the Board's proceedings are suspended pending final disposition of this case, the Court finds it is more appropriate to stay the present action under these circumstances than to dismiss it.

## **CONCLUSION**

Accordingly, for the reasons set forth above, Defendants' Motion to Stay [13] is **GRANTED**, and this action is **STAYED** pending mediation, and if necessary, arbitration. Defendants' Motion to Dismiss [13] is **DENIED AS MOOT**. The parties are directed to submit to mediation, pursuant to the Agreement, within 60 days from the date of this Order. Should the parties' mediation efforts fail to resolve the dispute, the parties shall proceed to arbitration pursuant to the terms of the Agreement. The parties are further directed to file a joint status report every 60 days until further Order from the Court.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 29, 2022
Spartanburg, South Carolina